UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 2/9/2018
```

RAMON PEGUERO,

                Petitioner,

v.

JOSEPH T. SMITH,

                Respondent.

No. 14-CV-6128 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

In this habeas corpus petition pursuant to 28 U.S.C. § 2254, Petitioner Ramon Peguero challenges his 2007 New York state-court convictions. After Petitioner failed to file objections, this Court adopted the exhaustive report and recommendation ("the Report") of Magistrate Judge Dolinger in its entirety and dismissed the petition. Shortly thereafter, Petitioner claimed to have never received the Report and asked for more time to object, which this Court granted. Petitioner then filed objections, along with a motion pursuant to Rule 60(b) to prompt consideration of such objections. Having considered Petitioner's objections, this Court adopts the Report except for its finding on timeliness, dismisses the petition, and denies the Rule 60(b) motion as moot.

## BACKGROUND[1]

In December 2006, a New York state-court jury convicted Petitioner of two murders, attempted murder, conspiracy, burglary, and multiple counts of criminal possession of a weapon, and the state court sentenced him to 50 years to life in prison. On March 24, 2009, the First Department of the New York Appellate Division affirmed his convictions, *People v. Peguero*, 877

---

[1] The Court assumes familiarity with the underlying facts and procedural history of this case, but sets out facts relevant to the procedural posture of the habeas petition and Rule 60(b) motion.

1

N.Y.S. 2d 230 (1st Dep. 2009), and on June 10, 2009 the New York Court of Appeals denied his leave to appeal, 912 N.E. 2d 1081 (2009). On August 5, 2010, Petitioner moved pursuant to C.P.L. § 440.10 to vacate the judgment against him, but the motion was denied, as was his subsequent application for leave-to-appeal on January 31, 2013. On May 16, 2013, Petitioner petitioned for a writ of error coram nobis. That petition was also denied, and Petitioner's request for re-argument was denied on June 24, 2014. The parties dispute whether Petitioner sought leave to appeal.

On July 15, 2014, Petitioner filed the instant habeas corpus petition. Dkt. 1. On November 23, 2015, Judge Dolinger issued the 81-page Report, concluding that the petition was untimely and that, in any event, all of the petition's claims were either procedurally barred, meritless, or both. Dkt. 36. Judge Dolinger also recommended that a certificate of appealability not issue because Petitioner had not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). Pursuant to Rule 72, Judge Dolinger informed the parties that they had 14 days to file written objections. Report at 80. On April 11, 2016, this Court noted that Petitioner had filed no objections to the Report, adopted the Report in its entirety, and dismissed the petition. Dkt. 37.

On April 18, 2016, however, Petitioner wrote the Court and claimed that he had not received, or even known about, the Report until this Court's order and asked for a stay and an opportunity to respond. Dkt. 39. Petitioner added that he would also file a notice of appeal "to assure his pattern of diligent litigation is well documented." *Id.* at 1. On April 27, 2016, this Court extended Petitioner's deadline to object to the Report until May 27, 2016 and mailed him a copy. Dkt. 40. On May 2, 2016, Petitioner filed a notice of appeal of this Court's order adopting the Report, as he had indicated that he would. Dkt. 41. On May 27, 2016, Petitioner filed objections to the Report. Dkt. 42. On June 15, 2016, Petitioner wrote to Judge Dolinger in an attempt to rescind his appeal to the Second Circuit as premature because of this Court's extension of the time

to object to the Report. Dkt. 44. On July 1, 2016, this Court noted that the Second Circuit had rejected Petitioner's effort to withdraw his appeal, and stayed this action pending receipt of the mandate from the Second Circuit. Dkt. 45. On August 9, 2016, the Second Circuit issued its mandate dismissing Petitioner's appeal. Dkt. 46.

On January 3, 2017, Petitioner asked this Court to make a ruling concerning his objections to the Report. Dkt. 47. On July 1, 2017, Petitioner moved pursuant to Rule 60(b) for reconsideration of this Court's denial of his habeas petition. Dkt. 48. The New York County District Attorney's Office opposed the motion, Dkt. 49, and Petitioner replied, Dkts. 50, 51.

## LEGAL STANDARD

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "When a timely and specific objection to a report and recommendation is made, the Court reviews *de novo* the portion of the report and recommendation to which the party objects." *Razzoli v. Federal Bureau of Prisons*, No. 12-CV-3774 (LAP), 2014 WL 2440771, at *5 (S.D.N.Y. May 30, 2014). "To accept those portions of the report to which no timely objection has been made, however, 'a district court need only satisfy itself that there is no clear error on the face of the record.'" *Id.* (quoting *Wilds v. United Parcel Serv.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)). Furthermore, "[w]hen a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002). "This standard of review must be applied while remaining cognizant of the court's obligation to construe a pro se litigant's submissions liberally in the light that they raise the strongest possible arguments that they suggest." *Ganao v. United States*, No. 08-CV-9313 (RO),

3

2011 WL 924202, at *2 (S.D.N.Y. Mar. 16, 2011).

Federal courts only grant habeas petitions if the adverse state-court decision on the merits "was contrary to, or involved an unreasonable application of, clearly established Federal law" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2). To be contrary to clearly established federal law, the relevant state-court decision must be "opposite" to a conclusion the U.S. Supreme Court has made on a matter of law, or "decide[] a case differently" than the Supreme Court "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 364–65 (2000). The state-court decision makes an unreasonable application of clearly established federal law if it makes an "objectively unreasonable" application of the governing legal rule to the specific facts of the case. *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

## DISCUSSION

Petitioner's letters to the Court and the motion itself make clear that the purpose of the Rule 60(b) motion was to ensure that the Court addressed Petitioner's objections to the Report. *See* Dkts. 47, 48, 50, 51. But the Court had already granted Petitioner an extension of time to file objections, and intends to address them. *See* Dkt. 40. Petitioner's motion is thus denied as moot, as this order will now consider the merits of the objections.

Petitioner begins his objections with a list of 26 brief, conclusory statements, *see* Dkt. 42 at 2–3, followed by seven more-developed sections in which the substance of the initial statements reappear with more context. The court will thus address Petitioner's objections as he presents them.

### I. Timeliness

Petitioner avers that his habeas corpus petition is not time-barred. The Report concluded

that the petition was filed 91 days after the one-year statute of limitations. Report at 16; *see* 28 U.S.C. § 2244(d)(1). Petitioner does not challenge the Report's timing calculation per se, but argues that certain dates should be equitably tolled either because he has established actual (factual) innocence, *see Bousley v. United States*, 523 U.S. 614, 623 (1998), or because he has shown that extraordinary circumstances existed and that he demonstrated reasonable diligence, *see Jenkins v. Greene*, 630 F.3d 298, 302 (2d Cir. 2010). For the reasons stated below and in footnote 2, the Court assumes that the petition was in fact timely.

**A. Actual Innocence**

The Report was correct that Petitioner's claims of actual innocence do not excuse his untimely petition. In this context, "actual innocence means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623 (internal quotation marks omitted). Petitioner argues that three affidavits, which he submitted in his state-court § 440 motion, cast doubt on one of his murder convictions—the August 6, 2001 murder of Tyrelle Williams—and that evidence of all of Petitioner's other convictions rested on that murder conviction. Dkt. 42 at 7–9. But Judge Dolinger correctly noted that these affidavits were merely arguable evidence that does not meet the high standard of making it more likely than not that no reasonable juror would convict, *see McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013), or that "unquestionably" establishes innocence as a factual matter, *United States v. Quinones*, 313 F.3d 49, 68 n.17 (2d Cir. 2002). Moreover, even if the affidavits were credited and conclusively showed that one of Petitioner's co-conspirators committed the murder of Tyrelle Williams, that would do little to undermine the evidence that Petitioner entered a building armed with a gun and an intent to at least menace, and that Petitioner was thus guilty of burglary and the resulting felony murder. *See Peguero*, 877 N.Y.S. 2d at 231; N.Y. Penal Law §§ 140.30, 125.25(3). The Court thus finds no error with the Report's conclusion

5

that Petitioner has not met the actual-innocence standard that would excuse an untimely filing.

### B. Extraordinary Circumstances and Reasonable Diligence

Petitioner alleges that he did not receive notice of the final denial of his § 440 motion until he wrote to inquire as to the motion's status and received a late notice on May 13, 2013.[2] He argues that the period between January 31 and May 13 should thus be equitably tolled. "[P]rolonged delay by a state court in sending notice of a ruling that completes exhaustion of state court remedies can toll the [federal habeas] limitations period." *Diaz v. Kelly*, 515 F.3d 149, 155 (2d Cir. 2008). Petitioner acknowledges, however, that his initial 14-month delay in filing his state collateral challenge left him a mere 34 days on his habeas clock. *See* Dkt. 42 at 5. From this delay, the Report concluded that Petitioner did not demonstrate sufficient diligence. *See* Report at 18–20. Because the federal habeas clock beings running again when a state-court order is filed, not received, *see Saunders v. Senkowski*, 587 F.3d 543, 549 (2d Cir. 2009), the Report found that Petitioner's initial delay "exposed him to the considerable likelihood that his time would run even if he received prompt notice" of all future state-court decisions. Report at 18–19.

Petitioner did run a risk that his claims would lapse, but language from the Second Circuit persuades the Court that Petitioner cannot be found not to have been diligent from this initial delay alone. In *Valverde v. Stinson*, 224 F.3d 129, 136 (2d Cir. 2000), the Circuit noted that a petitioner:

> is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his habeas petition. He would have acted reasonably by filing his petition any time during the applicable one-year period of limitations. Extraordinary circumstances cannot "prevent" a petitioner from filing on time if, prior to the occurrence of those circumstances, the petitioner has been so neglectful in the preparation of his petition that even in the absence of the extraordinary circumstances, a reasonable person in the petitioner's situation would have been unable to file in the time remaining within the limitations period. A petitioner should

---

[2] Although the Court might under other circumstances hold an evidentiary hearing to resolve the factual question of when Petitioner received notice, here it is unnecessary to do so because even assuming that he qualifies for equitable tolling, his petition fails on the merits.

6

not be faulted, however, for failing to file early or to take other extraordinary precautions early in the limitations period against what are, by definition, rare and exceptional circumstances that occur later in that period.

While thirty-four days is a relatively small window for Petitioner to leave himself to file his petition, it is not small enough to assume that a succession of brief intervals between the mailing and receipt of notices, *see Saunders*, 587 F.3d at 550, would have foreclosed his ability to do so. Accordingly, the Court finds that, assuming the truth of his allegations regarding notice, Petitioner was reasonably diligent in both checking on the status of his state motion that he thought was still pending, and in taking action once he discovered that the onus to act was back on him. *See Diaz*, 515 F.3d at 155. The Court will thus view the petition as timely filed and, as the Report did as well, consider Petitioner's claims.

## II. Evidence Claims

The Report found Petitioner's sufficiency-of-the-evidence claims either procedurally barred or meritless.[3]

### A. Procedural Bar

On direct appeal, Petitioner attacked only the sufficiency of the evidence sustaining his conviction of the murder, burglary, and weapons counts related to the August 6, 2001 murder of Tyrelle Williams. *See Peguero*, 877 N.Y.S. 2d at 231. Because state-court recourse for his other sufficiency-of-the-evidence claims by either direct appeal or § 440 motion is now closed to Petitioner, those claims "will be deemed exhausted" and subject to procedural default analysis. *St. Helen v. Senkowski*, 374 F.3d 181, 183–84 (2d Cir. 2004). Under that analysis, Petitioner may not overcome his procedural default unless he demonstrates both "cause" for the default and "actual

---

[3] Petitioner titled these claims as "weight of the evidence" claims—which are not cognizable federal claims, *see e.g.*, *Douglas v. Portuondo*, 232 F. Supp. 2d 106, 116 (S.D.N.Y. 2002)—but Judge Dolinger, liberally construing this *pro se* petition, viewed the claims as cognizable sufficiency-of-the-evidence claims. Report at 27–29.

7

prejudice" resulting from it, or that "a fundamental miscarriage of justice" will result if the defaulted claims are not considered. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

The Report concluded that Peguero could not demonstrate cause because his appellate attorney could have raised other evidentiary arguments, but "plainly chose, in the exercise of sound judgment," to focus on the August 6, 2001 murder. Report at 33. Furthermore, though Petitioner in his coram nobis petition alleged ineffective assistance of counsel based on his lawyer's failure to bring more evidentiary arguments on appeal, the Report concluded that he never sought leave to appeal the denial of that petition. So while ineffective assistance of counsel can constitute cause for procedural default, *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000), the Report found that Petitioner never exhausted that ineffective-assistance claim and thus could not use it to prompt consideration of other barred claims, *see O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Petitioner responds that he did appeal the denial of his coram nobis petition. Respondent and Judge Dolinger thought otherwise, but some documents in the record suggest that Petitioner did seek leave to appeal. *See* Dkt. 35-7 at 3–8. The Court need not resolve that dispute, however, because, as discussed in Section VI below, Petitioner has not demonstrated that he received ineffective assistance from his appellate counsel and thus cannot demonstrate cause. *See, e.g., Larrea v. Bennett*, No. 01-CV-5813 (SAS) (AJP), 2002 WL 1173564, at *14 (S.D.N.Y. May 31, 2002) (citing *Aparicio v. Artuz*, 269 F.3d 78, 92–93 (2d Cir. 2001)).

In addition, for the reasons stated above in Section I.A, Petitioner has not demonstrated actual innocence, which is the only situation to which the fundamental-miscarriage-of-justice exception applies. *See Murray v. Carrier*, 477 U.S. 478, 496 (1986). Accordingly, Judge Dolinger was correct that Petitioner's sufficiency-of-the-evidence claims that he did not raise on direct appeal are procedurally barred.

8

### B. August 6, 2001 Charges

Petitioner did exhaust his challenges to his convictions for the murder of Tyrelle Williams and the related convictions for burglary and weapons possession. After considering the evidence, the Report rightly concluded that, especially in light of the deference owed to a jury's determinations of credibility, the New York First Appellate Department's decision that the evidence for these convictions was sufficient was "plainly justified" and certainly did not meet the standard of being "objectively unreasonable," *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012) (internal quotation omitted). Report at 36. Petitioner objects, arguing that the state's case relied on co-conspirators, whose testimony should not have been admitted because of C.P.L. § 60.22, which provides in relevant part that "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." C.P.L. § 60.22(1). But as Judge Dolinger noted, ample non-accomplice evidence also connected Petitioner to the charged offenses and corroborated the co-conspirator testimony. *See, e.g.*, Report at 37; Dkt. 18 at 34; Dkt. 20 at 65–66. The trial court also instructed the jury that it could not convict Petitioner based on uncorroborated testimony from accomplices. Dkt. 20 at 65–66. In sum, the Court sees no error with the Report's conclusion that it was not objectively unreasonable to find that there was sufficient evidence for Petitioner's convictions for the August 6, 2001 crimes.

### III. Jury Instruction

Petitioner asserts that he was deprived of a fair trial because the trial court declined to instruct the jury on a justification defense regarding the August 6, 2001 murder. Judge Dolinger concluded that the evidence, even when viewed favorably for Petitioner, did not merit a justification defense, let alone that the state court unreasonably applied clear Supreme Court law

9

in denying him the instruction. Report at 41–42; *see Jackson v. Edwards*, 404 F.3d 612, 621 (2d Cir. 2005). In response, Petitioner argues—in conclusory fashion—that the Appellate Division "stretches the evidence to accommodate whatever theory fits the conviction rendered." Dkt. 42 at 12. The Court sees no error with the Report's conclusions that Petitioner was not entitled to a justification instruction and that the Appellate Division did not unreasonably apply Supreme Court law.

**IV. *Massiah* Claim**

Petitioner asserts that his Sixth Amendment right to counsel was violated by the admission of the testimony of two jailhouse witnesses who he claims were cooperating with the government at the time of their conversations with him. *See Massiah v. United States*, 377 U.S. 201, 206 (U.S.) (holding that the rule against deliberately eliciting incriminating statements from a defendant applies "to indirect and surreptitious interrogations as well as those conducted in the jailhouse" (internal quotation omitted)). After concluding that this claim was not procedurally barred, Judge Dolinger found that the Appellate Division's conclusion that there was no evidence that the jailhouse witnesses were acting as agents of the State was "plainly consistent" with the trial record and in no way unreasonable. Report at 49–50. Indeed, the conversation between Petitioner and one witness—Francois Beauchamp—occurred four months before the execution of Beauchamp's cooperation agreement, and the conversation between Petitioner and the other witness—Isaac Scott—occurred five years prior to Scott entered into his agreement. *Id.* at 49; *see* Dkt. 11-5 at 67–71, 75–79.

Petitioner offers no evidence that contradicts this timeline. Instead, he asserts that the State "clearly requested Scott and Beauchamp's help and tempted them both with promises of favorable treatment" and that "[n]either witness volunteered a statement until prosecution made it known

10

they needed help in prosecuting their case." Dkt. 42 at 14. Given the absence of evidence supporting the contention that the State had any role in prompting the witnesses' conversations with Petitioner, the Court sees no error with the Report's conclusion that the Appellate Division was not unreasonable in rejecting Petitioner's *Massiah* claim. *See United States v. Birbal*, 113 F.3d 342, 346 (2d Cir. 1997) ("The Sixth Amendment rights of a talkative inmate are not violated when a jailmate acts in an entrepreneurial way to seek information of potential value, without having been deputized by the government to question that defendant.").

**V. Juror Claim**

Petitioner next argues that he was denied a fair trial because the trial judge should have dismissed the jury foreperson in light of the judge's inquiries of her and/or because she lived near the site of the events in question and might have had personal knowledge of the facts of the case. The Report concluded both that Petitioner had not exhausted this claim because he failed to raise it on direct appeal, and in any event, that the trial judge's handling of issues related to the foreperson were all within the discretion owed to a trial judge in managing a trial. Report at 53–54, 60–64.

Regarding his lack of exhaustion, Petitioner appears to argue that his appellate counsel was ineffective in raising the issue on direct appeal, constituting sufficient cause to raise the issue now despite not having exhausted it. *See* Dkt. 42 at 17. As noted, however, this Court finds below that appellate counsel was not ineffective and Petitioner cannot demonstrate cause. *See* Section VI, *infra*. As for the merits of the claim, in his objections Petitioner recites various cases and standards governing jurors who commit perjury or are otherwise grossly unqualified without doing anything to establish that the foreperson engaged in any improper behavior or was otherwise unqualified. *See* Dkt. 42 at 17–20. The Court thus finds no error with the Report's conclusions that Petitioner's

juror claim was procedurally barred, and that in any event the trial judge's treatment of the jury foreperson was reasonable in all regards.

**VI. Ineffective Assistance Claims**

Lastly, Petitioner asserts that he suffered from ineffective assistance of counsel in many iterations. To prevail on an ineffective-assistance claim, a defendant must show that his counsel's performance was so deficient that he "was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A defendant must also demonstrate that the deficient performance of counsel prejudiced the defense in that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. A defendant cannot claim ineffective assistance "merely because in hindsight he thinks counsel's trial strategy was inadequate." *United States v. Sanchez*, 790 F.2d 245, 253 (2d Cir. 1986). Furthermore, "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal quotations omitted).

The Report reviewed each ineffective-assistance claim in depth and found that none came close to meeting the deficiency and prejudice showings required by *Strickland*. It also found that the trial court had not unreasonably applied Supreme Court precedent in rejecting the claims. Report at 66–79. Specifically, the Report concluded that (1) Petitioner had not shown that his trial counsel's motion for severance was inadequate; (2) it was not unreasonable for Petitioner's counsel not to raise an objection based on C.P.L. §60.22's accomplice-testimony rules; (3) Petitioner's counsel did not perform deficiently in failing to challenge the trial court's jury instructions; (4) it

was reasonable for Petitioner's counsel to acknowledge Petitioner's past convictions and to ask for a justification-defense instruction; (5) Petitioner did not demonstrate that his counsel did not investigate the case; (6) Petitioner's counsel was not deficient in declining to ask for a missing-witness instruction, material-witness order, or sanctions for destroyed evidence; and (7) Petitioner's counsel had no basis to move to dismiss the indictment pursuant to C.P.L. §§ 40.20 or 200.60.

In his objections to these conclusions, Petitioner largely makes conclusory assertions that his counsel was ineffective and that Judge Dolinger failed to appreciate his deficiencies. *See* Dkt. 42 at 21–24. Petitioner does, however, also make several more specific objections that the Court will address individually. First, Petitioner asserts that his counsel failed to make or join in a renewed motion for severance when more facts about the charges against him became known. *See* Dkt. 42 at 22. As the Report noted, however, any severance motion "was destined to fail" because of the underlying facts of the case, not lack of effort or skill by counsel. *See* Report at 67. Second, Petitioner asserts that his counsel offered "no opposition" to the testimony of co-conspirator Reynaldo Mojica. *See* Dkt. 42 at 23. The lengthy cross-examination in the record reveals otherwise. *See* Dkt. 17 at 49–60. Third, Petitioner argues that the cumulative effect of his counsel's conduct was to deprive him of a fair trial. *See* Dkt. 42 at 23. But as Petitioner has not shown any deficiency in the individual aspects of his counsel's performance, viewing the performance as a whole does nothing to further his claims. As Judge Dolinger noted, "[Petitioner's] attorney pursued an aggressive strategy in defense, both before, during and after trial." Report at 66. Petitioner's conviction "proves only that counsel, faced with a very strong prosecution case, was not a miracle worker, not that he was incompetent." *Id.* at 67.

Fourth, Petitioner appears to also raise ineffective-assistance claims as to the performance

of his appellate counsel. He argues that appellate counsel was ineffective in not ensuring that "the free standing unqualified juror claim, *Massiah* claim or legal sufficiency" would receive federal review. Dkt. 42 at 21. This Court, however, has considered Petitioner's juror and *Massiah* claims and found them to lack merit. *See* Sections, IV, V, *supra*. As to the legal sufficiency argument, the Court again echoes Judge Dolinger's conclusion that appellate counsel "plainly chose, in the exercise of sound judgment" to focus his evidentiary attacks on the August 6 murder. Report at 33. The abundant evidence in the record relating to the other convictions strongly supports the conclusion that appellate counsel's strategic choice was well within *Strickland*'s "wide range of reasonable professional assistance." *See, e.g.*, Dkt. 16 at 3–4, 75–76; Dkt. 18 at 27, 48–50; Dkt. 19 at 23–26, 52–53.

Finally, Petitioner asks for an evidentiary hearing to examine the performance of his counsel in more detail. *See* Dkt. 42 at 22. "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474, (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.* Such is the case here. The record is clear that none of Petitioner's ineffective-assistance claims can meet either *Strickland* prong, making any further evidentiary inquiry unnecessary.

In sum, the Court sees no error in the Report's conclusions on the ineffective-assistance claims, and finds no merit in Petitioner's allegations of deficient appellate counsel.

## CONCLUSION

For the reasons stated, the Court adopts the Report with the exception of its finding on timeliness, denies the habeas petition, and denies the Rule 60(b) motion as moot. The Clerk of Court is respectfully directed to terminate docket entry 48 and close this case. Pursuant to 28 U.S.C. § 1915(a)(3), the Court certifies that any appeal of this order would not be taken in good faith. *See Coppedge v. United States,* 369 U.S. 438, 445 (1962).

SO ORDERED.

Dated: February 9, 2018
New York, New York

Ronnie Abrams
United States District Judge